[No. 3174–2. Division Two. January 5, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS JON EDWARDS, *Appellant*.

*Donald A. Greig* of *Clark County Legal·Defender,* for appellant.

*James E. Carty, Prosecuting Attorney,* and *Roger A. Bennett, Deputy,* for respondent.

PETRIE, J.—Two consecutive life sentences were imposed upon Douglas Jon Edwards following his pleas of guilty to those portions of a 4–count information which charged him with the crimes of rape and robbery, each committed while armed with a firearm and a deadly weapon. The two other counts, which charged burglary and forgery, were dismissed. Mr. Edwards appeals; we affirm.

The information was filed in Superior Court for Clark County on June 6, 1975; and, in open court on July 17, Mr. Edwards signed a 5–page statement of defendant on plea of guilty, together with a 2–page supplement thereto, after his counsel detailed a step–by–step explanation of its meaning and impact upon him and after he acknowledged his step–by–step understanding of that statement and its supplement. The court accepted the pleas, and the defendant waived a presentence investigation.

At the same proceeding, the prosecutor filed a petition for sexual psychopathy, and the defendant waived the 10–day notice requirement of RCW 71.06.020. Based on a psychiatrist's report (and the defendant's waiver of the necessity for a second report pursuant to RCW 71.06.040) the court found reasonable grounds to believe Mr. Edwards was a sexual psychopath and ordered him committed to

Western State Hospital for 90 days for observation as to the existence of sexual psychopathy.

Item 10 of the defendant's statement on plea guilty, as augmented by the supplement thereto, provides:

I have been told the Prosecuting Attorney will take the following action and make the following recommendation to the court:

. . .

(f) If at the conclusion of the ninety day (90) day evaluation the sexual psychopathy staff recommends that the defendant be permanently committed back to the program, the Prosecutor will make the same recommendation.

. . .

(h) If in the opinion of the Sexual Psychopathy Program staff the defendant successfully completes that program, then at the time the defendant is returned to court for hearing pursuant to RCW 71.06.091, the prosecutor will recommend termination of commitment and the granting of a deferred sentence conditioned upon compliance with further or outpatient requirements of the Sexual Psychopathy Program, as well as other usual conditions, but not conditioned upon any further incarceration.

(i) At the time of this plea and recommendation for commitment to the Sexual Psychopathy Program, the prosecution will not request or move the Court for entry of a special finding of fact that the defendant committed the instant crimes while armed with or in possession of a firearm or while armed with or in possession of a deadly weapon. If in the opinion of the staff of the Sexual Psychopathy Program at Western State Hospital, the defendant successfully completes that program, then such special findings will never be requested by the prosecution. If in the opinion of the staff of the Sexual Psychopathy Program the defendant fails to successfully complete that program, then at the time of further hearing under RCW 71.06.091, the prosecution will move the court for entry of such special findings.

Following the 90–day observation period, the staff at Western State Hospital assigned to Mr. Edwards the clinical diagnosis of "sexual deviation, rape" and concluded that he was an appropriate candidate for a specialized treatment

program at Western State Hospital. Upon stipulated findings, the court, on October 16, 1975, entered the following order:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the defendant be and is hereby committed to the Director of Western State Hospital, Community Services Division, Department of Social and Health Services, for detention, care and treatment as a sexual psychopath pursuant to the terms and provisions of RCW 71.06.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this matter be continued until such time as a report has been returned by the Superintendent of Western State Hospital pursuant to the provisions of RCW 71.06.091, but provided that the Superintendent of Western State Hospital, Community Services Division of the Department of Social and Health Services, or the Director of the Department of Institutions shall not release the defendant from custody without express order of this Court.

Neither on July 17 nor on October 16 did the court pronounce or enter any specific sentence for the two crimes. At the latter hearing, defense counsel specifically requested that the court "enter sentence today." It is apparent that defense counsel was urging entry of a deferred or suspended sentence. When the court refused to enter any specific sentence, Mr. Edwards interjected himself into the proceedings as follows:

THE DEFENDANT: I need a clarification. If I complete the program, come back, at that time then you will evaluate it and possibly I will get a deferred sentence?

THE COURT: Yes, evaluate it at that time. If it looks like you're eligible for a deferred sentence, I can say very likely that you will be granted a deferred sentence. If you goof up on the program, come back with a different recommendation, most likely you will be committed to the Department of Institutions. So you have got an incentive to get in there and really work.

THE DEFENDANT: Thank you.

As a matter of adjudicated fact Mr. Edwards did "goof up on the program." He escaped from the Western State Hospital on May 6, 1977, was convicted in Pierce County of the crime of escape in the first degree as a result of that

escape, and on June 22, 1977, was sentenced to a correctional facility under the supervision of the Department of Social and Health Services for not more than 10 years.

Following Mr. Edwards' escape from Western State Hospital the Superior Court for Clark County entered an order directing him to show cause why the order of commitment theretofore entered on October 16, 1975, should not be revoked. A bench warrant was issued, Mr. Edwards was returned to Clark County, and on October 7, 1977, the court (1) found that Mr. Edwards did violate the terms and conditions of the 1975 order of commitment, (2) entered the special findings then requested by the prosecuting attorney as to the commission of the crimes while armed with a firearm and a deadly weapon, and (3) revoked the October 1975 order of commitment to Western State Hospital.

On October 12 Mr. Edwards filed (1) a motion to revoke the order which had revoked his 1975 commitment, (2) a motion to revoke the entry of special findings, (3) a motion to withdraw his pleas of guilty, and (4) a motion for a due process hearing on the issues of whether (a) he violated the terms of his 1975 commitment to Western State Hospital, (b) his pleas of guilty should be withdrawn pursuant to CrR 4.2(d) and 4.2(f), and (c) special findings should be entered. All of defendant's motions were denied, and on November 10, 1977, the court entered judgment and sentence imposing a maximum penalty of two consecutive life terms.

In his first assignment of error, Mr. Edwards contends we should vacate the sentence imposed and remand the cause to Superior Court for Clark County "for resentencing under circumstances as they existed on October 16, 1975." He asserts that he suffered actual prejudice by the court's failure to impose sentence in 1975, as required by RCW 71.06-.030, because that omission resulted in his loss of the goodwill of the judge who accepted the joint (prosecutorial/defense) recommendation for treatment.

We recognize, of course, that the sentence imposed in 1977 is the most severe sentence which the law allows following convictions of the two crimes charged. We recognize, also, that the director of a state hospital administering a program of treatment for sexual psychopaths cannot be mandated to accept a patient committed to that hospital until there has been a determination of that patient's guilt of the underlying sex crime charged. *State ex rel. Schillberg v. Morris*, 85 Wn.2d 382, 536 P.2d 1 (1975). However, *Morris* and the statute interpreted therein *do not require* that in *all instances* the committing court must impose a specific *sentence* before committing a purported sexual psychopath for observation or treatment.

The statutory procedure, following a prosecutor's filing of a sexual psychopath petition, is prescribed by RCW 71.06-.030 which provides:

> The court shall proceed to hear the criminal charge. If the defendant is convicted or has previously pleaded guilty to such charge, judgment shall be pronounced, but the execution of the sentence may be deferred or suspended, as in other criminal cases, and the court shall then proceed to hear and determine the allegation of sexual psychopathy. Acquittal on the criminal charge shall not operate to suspend the hearing on the allegation of sexual psychopathy: *Provided*, That the provisions of RCW 71.06.140 authorizing transfer of a committed sexual psychopath to a correctional institution shall not apply to the committed sexual psychopath who has been acquitted on the criminal charge.

The statute appears to mandate that the "court shall proceed to hear the criminal charge" and, following a return of verdict or offer of a guilty plea, "judgment shall be pronounced." Arguably, therefore, in the case at bench, the court did, in July 1975, pronounce judgment by accepting his pleas of guilty. That was the court's adjudication of the defendant's guilt of the two crimes charged. The rules of criminal procedure promulgated by the Supreme Court appear to distinguish between the adjudicative function to

determine guilt and the dispositive duty to impose sentence. *Compare* CrR 7.1 *with* CrR 7.3.

■ Nevertheless, RCW 71.06.030 declares, "but the execution of the sentence may be deferred or suspended, as in other criminal cases, . . ." That portion of the statute appears to declare that *execution,* not *imposition,* of the sentence may be deferred or suspended; thus implying that following an adjudication of guilt, the court is required to *impose* some "sentence." In any event, the line of distinction between "judgment" and "sentence" in this jurisdiction is considerably blurred, if it exists at all. *In re Clark,* 24 Wn.2d 105, 163 P.2d 577 (1945).

The question then becomes, what sentencing alternatives were available to the court in 1975? Under the terms of the plea bargain presented to the court, the prosecution agreed to withhold seeking the special findings until such time as "the defendant fails to successfully complete that program." The defendant specifically agreed to this arrangement even though he had previously admitted that while committing both crimes (against women on two different days) he had in his possession an "unloaded pistol" and that in each instance he "pointed the gun at her."

Thus, in open court and in a formalized statement presented to the court, the defendant admitted that he had committed two felonies while armed with and in the possession of a firearm. Those admissions, under the provisions of RCW 9.41.025, would ordinarily require that the court's "sentence shall not be suspended or deferred." Here, however, the defendant had already agreed to the deferral of the court's entry of a finding of fact as to the firearm issue. Absent a resolution of that fact issue, the court could not have imposed a reasoned sentence. Accordingly, the defendant must also have agreed to the court's deferral of the imposition of any specific sentence. The defendant's present contention is that the court should have imposed a sentence by ignoring a key fact issue the resolution of which the parties to the agreement specifically postponed. We find that contention untenable.

The court committed no error in July 1975 by failing (or in October 1975 by refusing) to impose a specific sentence upon the defendant.

Next, Mr. Edwards contends he was denied due process of law because he was denied the opportunity, at the revocation proceedings, to present evidence of his progress in treatment at Western State Hospital. It is eminently clear, from the record, that the revocation court expressly revoked the 1975 order of commitment on the basis of the prosecution's evidence that Mr. Edwards had been convicted in Pierce County of the crime of escape for which he was sentenced to a penal institution. Any progress Mr. Edwards may have been making in his treatment program would be totally immaterial to the validity of that conviction and sentence. Indeed, the record does not reflect any desire by Mr. Edwards to challenge the validity of the Pierce County sentence. We find no denial of due process merely because he was denied an opportunity to present immaterial evidence.

Next, Mr. Edwards contends he was denied due process of law by reason of the manner in which the revocation judge conducted himself at those proceedings. We find no denial of due process.

After the court had been presented with a transcript of the 1975 plea–taking proceedings and had been informed of the escape and conviction, and after listening to counsel's persistent pleas to present witnesses who would attest to the progress Mr. Edwards had been making prior to his escape, the hearing proceeded as follows:

THE COURT: Well, unless counsel can point to some manifest injustice that needs to be corrected, I'm ready to proceed at this time.

MR. GREIG: Mr. Edwards, I think, has something to say about that.

MR. EDWARDS: Well, my understanding when I went to Court two years ago in front of Judge Langsdorf was that the weapons charges were going to be dropped, and they got into a big hassle. They were going around and around

and throwing these long words back and forth and completely lost me.

Then when I signed them papers, I didn't read them papers, I just took their word they were telling me the truth, and that I understood they were telling me that it was being dropped, and I signed the papers.

THE COURT: I think that's pure B.S., quite frankly. You had probably one of the finest criminal lawyers that ever practiced in this community, one of the more careful attorneys that ever practiced here.

It's plain hogwash. You sit around with your other buddies at Monroe and think of all the neat technicalities you can come back with. I have read this thing over and I can't conceive that you were confused.

After listening to additional remarks of both counsel as to the significance or lack of significance of a letter apparently written by someone on the staff at Western State Hospital, after listening to Mr. Edwards' contention that the staff at Western State Hospital had lied to the prosecutor, after listening to his counsel's assertion that he had a very limited command of the English language, and after listening to his counsel's explanation that Mr. Edwards now wished to withdraw his pleas of guilty, the court inquired of counsel whether either counsel had anything else to say. The following colloquy then occurred:

MR. GREIG: My only comment, Your Honor, is that I think this is one of the most high–handed and objectionable proceedings that I have been involved in in Clark County.

THE COURT: It doesn't bother me a bit. Quite frankly, I'm so tired of hearing some of your B.S., Mr. Greig, I hope the Court takes a long look at the facts and says that's just exactly what it was.

I've asked you time and time again to give some reason. You're an officer of the court, tell me. All you want is we can, and have given me no reason for the we can. So lay it out, I'm putting it all on the record and you can say I was highly prejudiced or something, which is not true.

MR. EDWARDS: I'm only asking for a fair hearing. I'm telling you I didn't understand what went on that day, and I didn't read the paper because I don't understand half of the words that are on the paper in the first place.

THE COURT: Well, if you get any place with that argument, then heaven help the system. Under the facts of this case, I mean, like I say the transcript is exhaustive. Over and over they make sure that it is clear to you.

MR. EDWARDS: I didn't make the transcript, and I didn't read it.

THE COURT: It was what was being said.

MR. EDWARDS: I didn't understand what was being said because there was a lot of things flying back and forth.

THE COURT: I don't believe you. I think any further delay in this proceeding would be a manifest injustice to the system of so called justice.

█ Inserting additional portions of the record into this opinion would only further expand upon an already unduly protracted opinion. The court's rebukes of the defendant and his counsel obviously exceeded the bounds of dispassionate and dignified judicial decorum normally expected and usually attained even in the electrified atmosphere of a revocation proceeding in which a defendant's future opportunities for release from custody have been seriously curtailed. Nevertheless, from a review of the record in its entirety, we find the court's remarks, if not strictly justified, at least understandable. We find no reason to vacate the judgment and sentence subsequently entered after the court's uncharacteristic utterances.

Finally, Mr. Edwards contends the sentencing court abused its discretion by denying his motion to withdraw his pleas of guilty. The asserted basis for the defendant's motion is his contention that he did not understand the plea proceedings. More specifically, he contends that he believed the allegations in the information pertaining to the firearms and deadly weapons would be dropped upon his entry of the guilty pleas to the two charges.

In measuring a defendant's request to withdraw a plea of guilty, the court must determine whether "it appears that the withdrawal is necessary to correct a manifest injustice." CrR 4.2(f). The trial court specifically found "that no manifest injustice needs be corrected." We can only echo the

trial court's remark that "any further delay in this proceeding would be a manifest injustice to the system of so called justice." By his own imprudent actions, Mr. Edwards removed himself from the therapy program originally offered to him following acceptance of his pleas of guilty to two crimes of violence and after his rights and responsibilities had been most carefully and most exhaustively explained to him.

The sentence imposed and entered is affirmed.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied January 30, 1979.

Review granted by Supreme Court July 20, 1979.